Good morning, your honors. Nice to see you again. Thank you, your honor. Different, different city. Different city, different place, right? Different place. Okay. Different case. Carl Gunn, your honor, is appearing for Mr. Burton. There are a lot of things I could talk about in this case, and I'd certainly rather talk about whatever your honors want to ask about, but there are three points I'll start with just to make sure they're clear, not necessarily that they're the strongest. First, a probation search needs to comply with state law requirements as well as Fourth Amendment requirements, and the probation search here, the probation search condition here didn't do either. Second, the officer's knowledge that there was some probation search condition here didn't give them knowledge of what searches that probation condition allowed. Let me ask you this, counsel. Under Laura, what is your best argument that the Fourth Amendment waiver search under Laura was unreasonable in this setting? All right. And, of course, part of my point is first you've got to find it was valid under state law. I get that. All right. So we'll take your brief and put that in our brain. All right. That's what you're arguing. But on this issue. Going to that. All right. Going to that, your honor. Your honor, Laura basically looks at, I'd sort of break it out as about six factors. It looks at whether the defendant was, quote, unambiguously informed of the condition, unquote. It looks at whether the person accepted the condition. It looks at the seriousness of the offense the person was on probation for. It looks at the seriousness of the suspected violation. It looks at how private and personal the place or thing being searched is. It looks at whether the search condition was clear. I would submit that every one of those factors goes against the government here. First of all, the unusual, most striking thing about this case is Mr. Burton was not only unambiguously informed of the condition, he was never informed of it. And California law specifically requires that. Second, he never accepted the condition because he wasn't informed of it. Again, California law specifically requires that, which is why the California law compliance is an issue here. The seriousness of the offense he was on probation for, it was reckless driving. That's probably at the lowest end of the continuum. The seriousness of the suspected violation, driving with a suspended license. Again, probably about as low as you can get on the continuum. How private and personal the place or thing searched was. Well, we're not talking about a cell phone like in Lara, but we are talking about the home, which both this Court and the Supreme Court has described as being, quote, at the core, unquote, of the Fourth Amendment. Finally, whether the search condition was clear. It actually wasn't that clear. I don't think this is the strongest point, but with or without probable cause, the language in this search condition was something three different Ninth Circuit judges couldn't agree on in King. You remember Judge Berzon had a different opinion about what that meant than Judge Graber, and I forget who the other judge on that case was. So I think, frankly. You mean some of our judges don't agree? Some of your judges don't agree. I am shocked. But if something's clear, they do agree, Your Honor, and that's an illustration of how it's not clear. So I think under Lara, Your Honor, I mean, we don't really even. Logical. I mean, you can almost skip the state law compliance issue, though. I think that's really a dramatic problem here because under Lara. Now, the government makes this good faith argument, and do let me address a couple points about that good faith argument. First of all, the case they rely on is Arizona v. Evans, which is completely different. Arizona v. Evans and a case similar that followed a hearing, those deal with entries in records that are inaccurate, and whether police officers get held responsible when a clerk or some other police officer entering something makes a mistake. That's not what happened here. The government agreed both in the district court and assumes for purposes of this appeal that whatever was in the record that the officer read was accurate. The question here is the validity of the underlying order, and that goes to the other cases I cite in my brief. There's Noster and Ramirez and Thomas that I cite in my brief. When you have that situation, what you basically do is you look through to the validity of the underlying order. If the person who issued the order or made the request for a stop or arrest had their probable cause or did whatever they were supposed to do, then it's upheld. And if they don't, then it's thrown out. What you don't do is get to totally insulate the invalidity by putting it into a database and saying, oh, well, now an officer relied on it, so that's a no-brainer. He wins. So that's problem number one. Problem number two that I'm not sure I highlighted very much in my brief that you really need to think about is I don't think the police officer's misinterpretation, if there was one here, matters, because I don't think whether the probation was for a misdemeanor, assault with a deadly weapon, or reckless driving matters. But even if it did, we don't have, remember one of the requirements of good faith, it's objective good faith. It's not whether the officer subjectively misread something. It's whether his misreading was reasonable. The only way to tell whether the misreading here was reasonable is if you have the original record to compare. If the original record said he was convicted of assault with a deadly weapon, he was convicted of reckless driving, he got a day in jail on assault with a deadly weapon, he got probation with a search condition on reckless driving, the officer's misreading of that would not be objective good faith because it wouldn't be reasonable. Without that record presented by the government, you can't even evaluate whether his mistake was a good faith or reasonable mistake. I have a lot of time left, but I'll save it for rebuttal. Obviously, I'd love to answer any questions the Court has. Any questions at this time, or should we save it for rebuttal? Let's do that then, okay? Thank you, Your Honor. Good morning, counsel. Good morning, Your Honors. Nicole Reese Fox for the United States. I'll start with the LARA balance of interest. I actually agree with Mr. Gunn on the sort of six factors that he outlined that bear on Mr. Burton's privacy interests. I believe that almost all of those factors actually show how diminished his privacy interest was, and I'd also remind the Court that what Mr. Gunn didn't address at all was the other side of the ledger, which are the government's very strong interests in determining whether this recidivist drug dealer with violent conduct in his past is reintegrating into society or is returning to his criminal conduct. So I'll address the privacy interests first. So the question of whether Mr. Burton was unambiguously informed of the condition and accepted the condition, it's not true that it's a requirement of California law that the defendant be personally present. There's no case that says that, and there's no statute. On the contrary, California Penal Code 977A expressly permits an attorney to appear in court and accept on behalf of the defendant. This attorney was retained counsel at the time, and there's just no reason to believe that he didn't inform Mr. Burton about this condition, at a minimum. Seven months before this search, in April 2014, Mr. Burton was subject to a fourth waiver search in the same location as this search, and in the record we've included it at SCR 36, the officer's reports indicate that they actually informed Mr. Burton they were conducting a fourth waiver search. So at the time of this search, it's pretty clear on the record that Mr. Burton had been informed of this condition and knew about it. Did he object at that time, say, what are you talking about? No, Your Honor. It sounds like there was a bit of a scuffle. He didn't refuse to speak with the officers, but he pled guilty to the offense. He never challenged the condition. He never went into state court and collaterally challenged the condition. So I think that's enough to say that he was at least informed of it and accepted it. This wet, reckless DUI, I take issue with the idea that a DUI with aggravated conduct is at the lowest end of the spectrum of criminal conduct. He rammed into another driver's car, got out of the car, punched him in the face, all while he was drunk. The state judge determined that a fourth waiver condition was an appropriate condition, given the circumstances of that offense and this man's long criminal history. And so that certainly further diminishes his privacy interests as a probationer with this long criminal history. The house, searching the house, he was dealing drugs from the house. All of the officers testified that they were familiar with Mr. Burton from the neighborhood. They knew that he was a gang member that lived in the neighborhood. He was a drug dealer. And at the evidentiary hearing, it was pretty clear that they understood that once they found him driving on a suspended license and with marijuana in his possession, it was likely he was reoffending. And that gets them then to the house where they know that, where he's parked in front of, and they know that he's dealt, from which he's dealt drugs. Let me ask you a couple of questions. I've kind of written this down here that's convoluted, so forgive me if I kind of lick at my note here on this. What I noted is that the parties seem to agree that the money received is not forfeitable as proceeds of Burton's offense because the money could not have been proceeds of a drug distribution that had not yet taken place. But I want to ask you what specific evidence there is that remains that's sufficient for a rational juror to conclude that the money found with Burton's weapons and drugs was used or was intended to be used in any manner or part to facilitate the commission of his crime. Isn't that highly speculative? I don't think so, Your Honor. An expert testified at trial during the forfeiture proceeding. These were segregated out. So during the forfeiture proceeding itself, there was no testimony. But at the earlier trial, which was the same jury, and we have that testimony at SER 313 to 320, the expert testified that drug dealing is a cash business and that it looked like Mr. Burton had materials with him that were manufacturing, so he was buying pure cocaine and manufacturing it into cocaine base. And the expert also testified that drug dealers, the reason that they often have weapons, is to protect that cash and the drugs that they keep with them. So I would submit that on that evidence, on that expert testimony, and the jury's kind of reasonable understanding that drugs is a cash business and that having that large amount of cash is going to help Mr. Burton go out and buy the supply that he's then going to turn into that cocaine and sale. If you have all these materials in context that gives the juror and jury overall an ability to make this determination, whereas if you have them individually there, like if there were just a pile of cash, you really couldn't do much with that alone, could you? It would depend on the circumstances. You certainly could have an expert come in and talk about that cash with other circumstances. But, yes, here we have other circumstantial evidence that ties the cash to the drugs. The backpack where the cash was was right above, in the garage right above the sweatshirt where the drugs were. There was evidence that tied this working sack to Mr. Burton. And this is a preponderance standard, so the jury didn't have to find beyond a reasonable doubt. There are a number of cases that substantiate your ability to do this, right, with an expert witness? Yes, Your Honor. On the facilitation theory itself, I don't believe that this Court has reached this question. This Court in Garcia-Guizar sort of set aside the facilitation prong and ruling on a proceeds theory this wouldn't be enough. But I certainly think that under the statute which this Court has instructed should be read broadly, that evidence was sufficient. Unless the Court has any other questions, we'd submit. I think not. Thank you. Thank you. The Learning Council, you have some time left. Let us have it. Your Honor, a couple of points. First of all, this idea that Mr. Burton had noticed because of this prior, quote, probation search, unquote, several months earlier, the government I think really overreaches there. If you look at the record, look at its brief and what it cites. It's not citing any evidence that was presented at the suppression hearing. It's citing a pre-sentence report, a federal pre-sentence report that has hearsay in it that was prepared after the fact, and a police report it offered in a 404B evidence motion to the District Court. So problem number one is that wasn't evidence that was presented at the suppression hearing that can be used to support the suppression ruling. Problem number two is look at what even this hearsay police report. Now, what the defense would have done if that evidence had been presented at the suppression hearing is engaged in some extensive cross-examination about just what happened. But just look at the police report on its face. All it says is he approached Mr. Norris, I mean, I'm sorry, Mr. Burton. Mr. Norris is an old case. And said, I'm going to do a probation search. He did lure together for all of us. That was a long time ago. It was a probation search case. He approached Mr. Burton and said, I'm going to do a probation search. He didn't, it doesn't say he told Mr. Burton there's a probation condition. It doesn't say he told Mr. Burton this is a probation search condition and probation search conditions are discretionary with the court and the court ordered it. And you can somehow go back to court. I'm not even sure Mr. Burton could and get it changed. There's no evidence here that he was, for all Mr. Burton knew, who had been on parole before, it was like the parole search condition under California law, which is statutory and mandatory. So that does not show that Mr. Burton somehow, months after being sentenced in this case, acquiesced somehow or ratified this condition that he was supposed to accept and was supposed to have been unambiguously informed of it. There's nothing in the record, even if you could consider what the government relies on, that shows that. You know, the government also refers to this violent drug dealer with criminal record. The officers all testified was a drug dealer. Well, that wasn't quite the testimony if you read the record at the suppression hearing. And it wasn't, again, all the government points to is a pre-sentence report, which is not information that was in front of the court for purposes of the suppression hearing. And it actually doesn't show that. It has a burglary. The burglary, by the way, if you read the pre-sentence report, was a shoplifting burglary, someone who walked into a store and shoplifted. And that's burglary under California law. There's no record of violence there. The government points to some hearsay. They quote some hearsay allegation in the pre-sentence report about charging a police officer. There was never any evidence of that presented in the suppression hearing or anywhere else. So even if you could somehow look at the overall record, which I would submit Laura and King don't tell you to do, Laura and King say look at the offense he's on probation for, then you don't have anything here that would justify, that would favor the government in the Laura or King balancing. They refer to the marijuana as part of the justification. But remember, the marijuana was discovered as part of a probation search. The search of the person was part of the probation search. So you can't use the marijuana to justify the probation search. Did they find the marijuana on his person when they first stopped him? Is that what it was? Yes. But the search of his person when they found it was part of the probation. They only did that as part of the probation search. No, I understand. I wanted to understand the difference because my recollection was they found it on his person. And you're saying that the testimony of the expert about the environment and why he was a drug dealer, et cetera, et cetera, was in the house, right? The testimony of the expert at trial? A trial about what he found and how he got the information to the jury to make them believe that these, the collection of things found there suggested what he was about. Yeah. Actually, that testimony is really about the stuff that they found outside the house, the drop. Okay. The drop bag or whatever, the working bag or something. And that really, I don't think any of that goes to the, that was certainly not evidence that was considered or presented at the suppression hearing. Okay. So you can't, this was a suspicionless search, by the way. I think it's clear from the case law. Judge Clifton, you wrote a Franklin opinion where it speaks a little broadly, I think. It says there's reasonable suspicion. You can search if there's reasonable suspicion to think there's a probation violation. I think in context and given the purpose of a search, it's clear under the case law that what you need is reasonable suspicion to think there's evidence of a probation violation to be found in the place to be searched. Here, you know, the Arizona versus Gantt case makes clear that when someone's driving with a suspended license, there's no basis for suspicion of finding evidence in even a car, let alone the house. So this was a suspicionless search. If you don't rule in my favor on the Laura King issues, you're going to have to address the issues left open in King about whether a suspicionless search is ever allowed for a nonviolent offense that someone's on probation for that the person hasn't accepted. Those are both two issues left open in King that would need to be addressed. But I think Laura and King are pretty dispositive here, as well as the California case. I'll submit unless the Court has questions. Okay. Thank you both very much for your argument. Experienced lawyers are always nice to hear from experienced lawyers who know what they're talking about. But fresh students are pretty good, too. They're good, too. No, we've had some good students this week, really have. I guess in four days we've had students, and they've been very good. Thank you, Counsel. The case just argued is submitted.
judges: Schroeder, Clifton, M. Smith